UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDITH L GIBSON,

       Plaintiff,

v.

Case Number 11-cv-12920
Honorable Thomas L. Ludington

PROFESSIONAL ACCOUNT
MANAGEMENT, LLC,

       Defendant.
_____ /

OPINION AND ORDER OVERRULING PLAINTIFF'S
OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION,
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Fair Credit Reporting Act requires furnishers of consumer information to be reasonable. 15 U.S.C. § 1681s–2(b). When notified that a consumer is disputing a debt, for example, the furnisher must conduct a reasonable investigation. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616–17 (6th Cir. 2012).

Here, the debt at issue is a municipal parking ticket. The plaintiff did not pay it. So the municipality assigned the debt's collection to the defendant. The plaintiff disputed the debt with a credit reporting agency. The agency, in turn, notified the defendant of the dispute. The defendant first investigated by checking its records, where it confirmed the plaintiff's name, address, and driver's license number, as well as the parking ticket's date, amount, and the street where it was issued. The defendant then went outside its records and confirmed that information with the municipality's database. Under the circumstances, the defendant's investigation was reasonable.

# I

## A

A $30 parking ticket gives rise to this case. On September 23, 2010, the City of Detroit issued the ticket to the owner of a Ford Taurus with the Michigan license plate number 8JZT41 and vin number 1FALP58844RA2127220. The registered owner of the vehicle, according to the Michigan Department of State Bureau of Driver and Vehicle Records, was Plaintiff Edith Gibson.[1]

Plaintiff did not pay the parking ticket. The city assessed $50 in late fees. Still, Plaintiff did not pay. In January 2011, the city assigned the debt to Defendant Professional Account Management, LLC. It performs collection services for the City of Detroit, including collecting unpaid parking tickets.

Defendant, in turn, opened an account in Plaintiff's name. The account number ended with the digits 5553. Defendant then began sending Plaintiff notices that the City of Detroit had assigned Defendant the debt.

About three months passed. Plaintiff did not pay either the City of Detroit or Defendant. In late March, Defendant placed a notice of the debt on Plaintiff's credit report.

## B

In April 2011, Plaintiff completed a form online with Experian disputing the debt. *See* Gibson Dep. 60–61, June 18, 2012, *attached as* Def.'s Mot. Ex. C.

Experian then sent Defendant notice of an "e-OSCAR" credit dispute regarding Plaintiff's account. "e-OSCAR," an acronym for "Online Solution for Complete and Accurate

---

[1] *See* Mich. Dep't of State Bureau of Driver and Vehicle Records Report for Mich. Plate No. 8JZT41, *attached as* Def.'s Mot. Summ. J. Ex. P; see also Westlaw Motor Vehicle Record Search Results for Vin No. 1FALP58844RA2127220, *attached as* Def.'s Mot. Summ. J. Ex. P. This is not to suggest that Plaintiff ever actually owned the vehicle (she denies that she did), merely that the public records reflect that she did.

Reporting," is a system that enables credit reporting bureaus (like Experian) and data furnishers (like Defendant) to exchange information electronically regarding consumer credit history disputes.

One of Defendant's employees, Sonya Scruggs, investigated the dispute. In Defendant's records, as noted, Ms. Scruggs found Plaintiff's name, address, and driver's license number, as well as the parking ticket's date, amount, and the street where it was issued. She then confirmed that information with the City of Detroit's database. And she confirmed that Plaintiff was the registered owner of the ticketed vehicle.

Responding to the eOSCAR dispute the same day as the notice was received, Ms. Scruggs reported that although Plaintiff disputed the ticket, the information for account number 5553 was accurate.

### C

In June 2011, Plaintiff personally wrote to Defendant requesting formal validation of the alleged debt. Defendant received the letter on June 22. The same day, Defendant investigated and then responded that the debt had been verified.

This litigation ensued.

### D

On July 6, 2011, Plaintiff filed suit against Defendant in this Court. Count one of the complaint alleges that Defendant negligently violated the Fair Credit Reporting Act (FCRA). Count two alleges that Defendant willfully did so.[2]

---

[2] Count three has been dismissed by stipulation of the parties. ECF Nos. 24–25.

**E**

In October 2011, Plaintiff again contacted Defendant directly.  "I am sending you this letter to dispute inaccurate information in my credit file," Plaintiff wrote, continuing: "You are reporting inaccuracies and late payment information on my credit that I would like you to reinvestigate and remove."  Ms. Scruggs again investigated; again, she concluded the debt was valid.

Defendant received another eOSCAR dispute regarding Plaintiff's account in November 2011.  Once again, the debt was investigated by Defendant and found valid.

**F**

In December 2011, the case was referred to Magistrate Judge Charles Binder for general case management.  A little less than a year later, Defendant moved for summary judgment.  ECF No. 34.  Judge Binder held a hearing on the motion, then issued a report that recommends granting the motion.  ECF No. 44.

Plaintiff objects.  ECF No. 45.

**II**

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations.  28 U.S.C. § 636(b)(1).  The district court will make a "de novo determination of those portions of the report . . . to which objection is made."  *Id*.  The Court is not obligated to review the portions of the report to which no objection was made.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

**III**

Plaintiff enumerates two objections to Judge Binder's report and recommendation.  Neither identifies an error in Judge Binder's report or recommendation.

**A**

Plaintiff first objects that a genuine issue of material fact exists regarding whether Defendant acted reasonably because it did not mark "the debt as 'disputed' until on or about November 23, 2011, over 7 months after Plaintiff had first disputed [it]." Pl.'s Objections 3 (internal citation and emphasis omitted).

Plaintiff's objection lacks merit. Under the familiar summary judgment standard, the moving party has the initial burden of identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The nonmoving party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. That is, "to withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of her pleadings . . . she is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." *Chappell v. City Of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).

Here, Defendant carries its burden under Rule 56. Plaintiff does not. First, Defendant presents evidence that when it initially received notice that the debt was disputed (via the eOSCAR notice in April 2011), it marked the debt as disputed. In Ms. Scruggs's deposition, Plaintiff's counsel asked:

> Q: [Y]ou know for a fact the words [sic] "dispute" were placed on [Plaintiff's] trade line, this debt trade line, after 4/29/2011; is that correct?

> A: Yes.
>
> Q: And when did you place that on her credit report?
>
> A: 4/29/2011.
>
> Q: Is when you placed — and which credit reporting agency did you report that with?
>
> A: We report with TransUnion and Experian.
>
> Q: And you placed with TransUnion, Experian, telling them to put the words [sic] "dispute" on it, correct?
>
> A: It would depend on who her dispute came from, yes.
>
> Q: All right. Yes or no: Did you place the word [sic] "consumer dispute" on her credit report when you received this, this eOSCAR, on 4/29/2011?
>
> A: Yes.

Scruggs Dep. 106, July 19, 2012, *attached as* Def.'s Mot. Summ. J. Ex. D.

Plaintiff, in contrast, identifies no facts which support her contention that Defendant did not mark the debt as disputed until November 2011. In her objection, her only record citation is to the report and recommendation itself. She does not come forward with any depositions, or affidavits, other factual material demonstrating that the debt was not marked disputed until November 2011. *See, e.g.*, Gibson Aff. *passim*, *attached to* Pl.'s Resp. to Def.'s Mot. Ex. 1.

When a nonmoving party does not adequately respond to a summary judgment motion, as in this case, a district court is not to search the record to determine whether genuine issues of material fact exist. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The Sixth Circuit instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Twp.*

*Trustees,* 980 F.2d 399, 404 (6th Cir.1992); *see generally McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 839–40 (E.D. Mich. 2012).

Plaintiff's first objection will be overruled.

### B

Plaintiff's second objection is that a question of fact exists about whether Defendant's investigation was reasonable under the circumstances.  Plaintiff writes that the report errs in concluding that it was sufficient "that Defendant went beyond its internal records . . . .  The investigation, however, was not targeted to address the specific issues raised by Plaintiff in her disputes — that she never owned the vehicle the parking ticket was given to."  Pl.'s Objections 4.  Plaintiff continues: "Defendant's particularized knowledge of the nature of Plaintiff's dispute — that she did not own the vehicle in question — should have required Defendant to investigate ownership of the vehicle — not simply to confirm that its database matched the City of Detroit's database (which is where Defendant's information came from in the first place). Given these facts, a reasonable jury could conclude that in order to perform a reasonable investigation, Defendant was required to check with the Michigan Secretary of State."  Pl.'s Objections 5–6 (internal citation omitted).

Plaintiff's objection again lacks merit.

### 1

As a threshold matter, Plaintiff is correct that consumers may bring a claim to enforce the provisions of 15 U.S.C. § 1681s-2(b).  *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616–17 (6th Cir. 2012).  That section provides in pertinent part:

> After receiving notice [from a consumer reporting agency (CRA)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall —

    (A)    conduct an investigation with respect to the disputed information;

    (B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C)    report the results of the investigation to the consumer reporting agency.

§ 1681s-2(b)(1)(A)–(C). These duties, however, "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009), *discussed in Boggio*, 696 F.3d at 617.

To the extent that Plaintiff is asserting that Defendant had particular knowledge based on what Plaintiff herself told Defendant, Plaintiff has not alleged a violation under § 1681s-2(b). And Plaintiff offers no evidence of what specific information the CRAs provided to Defendant. Again, she does not carry her burden in opposing Defendant's motion.

**2**

As noted, a furnisher who is notified that a consumer is disputing a debt must conduct a reasonable investigation. *Boggio*, 696 F.3d at 616–17. "The burden of showing the investigation was unreasonable is on the plaintiff." *Chiang v. Verizon N. Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

"Reasonableness" is not a fixed standard; rather, "how thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Boggio*, 696 F.3d at 617; *accord Gorman*, 584 F.3d at 1160 ("[T]he reasonableness of an investigation depends on the facts of the particular case, most importantly the CRA's description of the dispute in its notice.").

When a furnisher is given "no guidance as to either the specific information that was disputed or the basis for the dispute" the obligation to investigate is "minimal." *Boggio*, 696

F.3d at 617 (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 40 (1st Cir. 2010)).  When the CRA provides the furnisher specific information about the precise nature of the dispute, the obligation is heightened.  *Boggio*, 696 F.3d at 617 (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429–31 (4th Cir. 2004)); *see generally* Michael Ferachi et al., *Fair Credit Reporting Act Update*, 65 Consumer Fin. L.Q. Rep. 34, 36–39 (2011) (collecting cases).

Here, Plaintiff offers no evidence that a CRA provided Defendant any information about the precise nature of the dispute — much less that Plaintiff was asserting that she did not own the ticketed vehicle.  *See, e.g.*, Gibson Dep. 60–61, June 18, 2012, *attached as* Def.'s Mot. Ex. C.

In Plaintiff's deposition, for example, she testified that she completed an on-line notice of dispute form with Experian.  *Id*.  She did not, however, testify that she notified Experian that she did not own the ticketed vehicle — much less that Experian notified Defendant of that in the eOSCAR notice.

It is possible therefore that Defendant was told nothing more than Plaintiff was disputing the debt.  Under those circumstances, it would have been reasonable for Defendant to do nothing more than a "cursory review of internal, electronic documents."  *Boggio*, 696 F.3d at 617 (citing *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005)).  Defendant, however, did not stop at a cursory review.  Instead, as Judge Binder cogently observed,

> Ms. Scruggs testified that she checked [Defendant's] records and found Plaintiff's name, address, date of parking ticket, client name (City of Detroit) and amount owed on the ticket ($80).  Ms. Scruggs also testified that she went beyond PAM's internal records by validating the credit information in the City of Detroit's database, which showed the same ticket number, the same location where the ticket was issued, that Plaintiff was the registered owner of the car to which the ticket was issued, and also confirmed the VIN and Plaintiff's Michigan driver['s] license number.

Report & Recommendation 6–7 (internal citation omitted); *see Gorman*, 584 F.3d at 1159–61 (affirming grant of summary judgment to furnisher because it had "gone outside its own records to investigate the allegations contained in the CRA notice").

Even if Defendant had checked with the Michigan Department of State Bureau of Driver and Vehicle Records, moreover, it would have found that the vehicle belonged to Plaintiff. *See* Mich. Dep't of State Bureau of Driver and Vehicle Records Report for Mich. Plate No. 8JZT41, *attached as* Def.'s Mot. Summ. J. Ex. P; see also Westlaw Motor Vehicle Record Search Results for Vin No. 1FALP58844RA2127220, *attached as* Def.'s Mot. Summ. J. Ex. P.

Under the circumstances, one conclusion is inescapable — Defendant's investigation was reasonable. Plaintiff's objection will be overruled.

### IV

Accordingly, it is **ORDERED** that the report and recommendation (ECF No. 44) is **ADOPTED**.

It is further **ORDERED** that Plaintiff's objections (ECF No. 45) are **OVERRULED**.

It is further **ORDERED** that Defendant's motion to strike (ECF No. 39) is **DENIED AS MOOT**.

It is further **ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 25, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 25, 2013.

         s/Tracy A. Jacobs
         TRACY A. JACOBS